Frances M. Cullers v. Commissioner. C. H. Cullers v. Commissioner.
Cullers v. Commissioner
Docket Nos. 52703, 52704.
United States Tax Court
T.C. Memo 1955-228; 1955 Tax Ct. Memo LEXIS 110; 14 T.C.M. (CCH) 925; T.C.M. (RIA) 55228; August 15, 1955
*110 1. Value of farm land and cattle determined for gift tax purposes. 2. Petitioner C. H. Cullers failed to prove a lower valuation for a hospital that he gave to his wife in 1933. Albert F. Hillix, Esq., Bryant Building, Kansas City, No., and John E. Park, Esq., for the petitioners. Urban C. Bergbauer, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in gift tax for the calendar year 1950 against Frances M. and C. H. Cullers in the amounts of $2,185.09 and $4,255.65, respectively, and a penalty of $546.27 against Frances M. Cullers for later filing of her 1950 gift tax return. In his petition C. H. Cullers claimed a refund of $1,922.62. The principal question presented is the value for gift tax purposes of a farm *111 and cattle given by petitioners to their two sons in 1950. There is also the question of the value of a hospital given by C. H. Cullers to his wife in 1933, which enters into the determination of the amount of gift tax payable by petitioners on their gift in 1950. The cases were consolidated for hearing and determination. Findings of Fact The petitioners are husband and wife, residents of Trenton, Missouri. Their gift tax returns for 1950 were filed with the collector of internal revenue for the sixth collection district of Missouri at Kansas City. C. H. Cullers was a practicing physician during 1950 and was also president and a shareholder of the Trenton National Bank. Between August and September, 1950, petitioners, by general warranty deed, conveyed to their sons, Robert E. and George A. Cullers, approximately 1,500 acres of farm land located north of the City of Trenton in Grundy County, Missouri, and certain livestock, farm machinery on the land, and cash. The warranty deed specifying the property transferred is incorporated herein by this reference. The transfer was a gift from the petitioners to their sons. Petitioners filed gift tax returns for 1950, on which the following *112 values for the above gifts were stated: Land
$ 39,000
Machinery and Equipment
6,850
Cattle
42,950
Swine
1,000
Sheep
2,500
Horses
150
Cash
10,000
$102,450 On their returns petitioners indicated their consent to have the gifts considered as having been made one-half by each of them. Between 800 and 900 acres of the land given to his sons were acquired by Dr. Cullers early in the 1920's by inheritance from his father, and about 480 acres were purchased between 1937 and 1939 at an average cost per acre of $7.95. Some of the parcels of land bought by Dr. Cullers were bought at foreclosure sales; others were bought from the Trenton National Bank. The farm was primarily a stock farm; some grain was raised. Of the approximately 1,500 acres making up the farm, about 275 acres were waste land; about 700 acres were bottom land with brush, which was untillable in its condition in 1950; and about 600 acres were improved upland. When transferred in 1950 the farm was in a generally poor condition, and its productivity was low. Not enough feed was produced to take care of the cattle and livestock on the farm. The property had on it a number of buildings, including *113 tenant houses and barns, that were in a state of disrepair. Considerable repairs and improvements to the buildings and land were made by petitioners' sons after the transfer. A farm, consisting of 1,115 acres, adjoining that of Dr. Cullers was bought in 1931 for about $34 an acre, and the owner was offered over $49 an acre for it in 1950 and sold it for over $89 an acre in 1955. In 1939 a bank valued it for loan purposes at $22 an acre. This farm was in better condition than Dr. Culler's farm. The cattle given by petitioners to their sons consisted of the following: 43
Hereford Yearling Heifers
18
Dairy Yearling Heifers
17
Hereford Yearling Steers
17
Hereford Yearling Steers
20
Hereford Two Year Old Heifers
3
Hereford Bulls
32
Dairy Cows
90
Hereford Cows
Prior to making the gift to his sons, Dr. Cullers had three persons appraise the property to be transferred in order to fix its value for gift tax purposes. The appraisers were businessmen and farm operators from the same area as Dr. Cullers. They were familiar with his farm and with the value of farm property in that area. The values arrived at by the three appraisers for the different categories *114 of property making up the gift were substantially the same, as shown by the following figures from their valuation report: Cattle
$42,950
$42,950
$43,100
Hogs
1,000
1,000
950
Sheep
2,500
2,500
2,500
Horses
150
150
150
Value of Cattle
and Livestock
$46,600
$46,600
$46,700
Farm Machinery
$ 6,850
$ 6,850
$ 6,850
Land
39,000
38,000
39,000
Total Valuation
$92,450
$91,450
$92,550 The complete valuation report of the appraisers is incorporated herein. In affidavits of the three appraisers attached to Dr. Cullers' gift tax return for 1950, the above values were stated to be the fair market values of the gift property. In 1933 Dr. Cullers made a gift to his wife of the hospital he used in connection of his medical practice. He had built the hospital in 1926 and 1927 at a cost of between $40,000 and $45,000. After making the gift he continued to use the hospital in his medical practice and paid his wife rent for its use. The gift of the hospital and other gifts made by Dr. Cullers to his wife in 1933 were reported by him on a gift tax return filed in December 1946, as follows: Value
Cullers Hospital - Built 1926
$45,000
Two lots in Fields Addition
1,500
1 Frame House - Built 1923
3,500
Total
$50,000
*115 From this total $5,000 was subtracted as an exclusion, and the total included amount of gifts for the year reported as $45,000. A specific exemption in the latter amount was claimed, so that for the year there was no amount if net gifts on which a tax could be laid. In 1950, when the gift of the farm was made by Dr. Cullers, a lawsuit was pending against the drainage district in which a part of the farm was situated to require the district to construct a bridge across its drainage ditch. Any liability determined against the drainage district would be met by taxes assessed on the land in the district. The value of the farm land given by petitioners to their sons in 1950 was $36 an acre. In determining the value for gift tax purposes of the cattle given by petitioners to their sons, the current year's calf crop was taken into account by petitioners. The fair market value of this cattle in 1950 was $42,950. Opinion TIETJENS, Judge: Section 1005 of the Internal Revenue Code of 1939 provides that where a gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift for purposes of determining the gift tax. The respondent's regulations *116 define "value" as "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell." Reg. 108, sec. 86.19 (a). The principal difference between the parties here is the fair market value in 1950 of the farm land given by petitioners to their sons. Respondent asserts that the value is $47.50 an acre, while petitioners reported a value of $26 an acre on their gift tax returns for 1950. In support of their valuation, petitioners offered the appraisals made at the time of the gift by the three persons selected by Dr. Cullers, and also the testimony, given at the hearing or by deposition, of various persons who were businessmen or farm operators in the area where Dr. Cullers' farm was located, and who were generally familiar with farm values in the area. The opinions of the witnesses either corroborated those of the appraisers, that the farm land had a fair market value of $26 an acre, or were to the effect that the appraisers' estimates were too high. The appraisal made at the time of the gift by the three persons selected by Dr. Cullers lists the items of property to be transferred and beside each item *117 the value estimated for it by each of the three appraisers. No explanation of the basis on which the values were reached was given, except for the testimony by deposition of one of the appraisers. This lack of adequate explanation characterizes also the testimony of some of the other witnesses on petitioners' behalf. They explained their qualifications and then went on to express an opinion as to value without, in most cases, explaining the bases for their opinions. The weight to be accorded opinion testimony as to value must depend on the quality of the opinion itself, on the extent to which the opinion represents on intelligent judgment based on considerations disclosed by the witness. Also, the benefit of having appraisals made by three persons was practically lost by the appraisers' obvious lack of independence in reaching their determinations. The values set down by each of them for the various items of property are identical in most cases. Further, the experience of most of those testifying on petitioners' behalf was almost wholly in the lending field, rather than in buying and selling property, which may have inclined the witnesses to be somewhat conservative in their estimates *118 of value. The testimony offered by respondent's witnesses, on the other hand, was of no help in supporting respondent's determinations of value. This testimony related wholly to the assessed value of the land for real estate tax purposes, but no correlation between this value and the fair market value of the land was successfully drawn. It was shown, however, that an offer of $49 an acre was made in 1950 for a farm adjacent to that of D. Cullers. On the basis of all of the evidence, we do not think that petitioners have proven the per acre value of $26 they contend for. Yet the testimony of their witnesses has shown that respondent's valuation is too high. Considering the description of the farm and its condition as testified to by petitioners' witnesses, the appraisers' and witnesses' opinions as to value, the possibility that existed in 1950 of an assessment against a part of the farm acreage to meet the cost of building a bridge in the drainage district (which would undoubtedly have entered into the amount a buyer would have been willing to pay), and the price bid for the farm adjoining Dr. Cullers', and all other relevant facts of record we have found the fair market value in *119 1950 of the farm land given by petitioners to their sons to be $36 an acre. The respondent increased also the value of the cattle given by petitioners to their sons, claiming that petitioners in valuing the cattle had failed to take into account the current year's calf crop. By deposition one of the appraisers testified that in placing a value on the cows the unweaned calves were taken into account, even though a value was not separately stated for them on the written appraisal made at the time. In addition there was other testimony from qualified witnesses that the practice in valuing cattle was to value cow and calf as a unit, not separately. This testimony was not controverted by respondent, and we deem it sufficient to overcome the presumption of correctness attaching to respondent's determination. Again, after having carefully weighed all relevant facts of record and applying our best judgment we find that the fair market value in 1950 of the cattle given by petitioners to their sons was $42,950. The remaining question concerns the value of a hospital given by Dr. Cullers to his wife in 1933. This gift was reported on a gift tax return filed by Dr. Cullers in 1946, on which *120 the hospital was valued at $45,000. A specific exemption in a like amount was claimed, so that no tax was payable on the gifts in 1933. In this proceeding Dr. Cullers seeks to reduce the valuation placed on the hospital to $10,000, which would have the effect of reducing the tax payable by him on the gifts in 1950. Whether he may do this we need not decide, since we feel that his evidence is inadequate to establish a value for the hospital in 1933 different from that reported by him on his gift tax return for that year and accepted by the Commissioner. The hospital was built in 1926 and 1927 at a cost of between $40,000 and $45,000. Dr. Cullers testified to his opinion that the value of the hospital in 1933 was $10,000. The only basis for his opinion that was "there wasn't any money in the county. Everybody was broke." One other witnesses a farm operator of long experience in the area, testified that the fair market value of the hospital in 1933 was $10,000. However, on cross-examination he was shown to have little qualification for estimating the value of a hospital. The only evidence, therefore, to support Dr. Cullers' contention for a lower value on the hospital is his opinion. *121 This is insufficient to prove his contention. Decisions will be entered under Rule 50.